ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

WILLIAM CARLTON,

Defendant.

**INFORMATION**

26 Cr. 429 (RMB)

**COUNT ONE**

**(Securities Fraud)**

The United States Attorney charges:

1. From at least in or about January 2015, up to and including at least in or about August 2022, WILLIAM CARLTON, the defendant, engaged in a scheme to defraud his investment advisory clients by "cherry picking," in which CARLTON systematically allocated profitable trades to himself and allocated unprofitable trades to his clients.

2. WILLIAM CARLTON, the defendant, served as an investment adviser to approximately 50 to 70 clients each year. Among other responsibilities, CARLTON managed trading accounts associated with individual clients and had authority to buy and sell securities for those managed accounts. As an investment adviser, CARLTON owed his clients a fiduciary duty, including the duty to act in their best interests and to refrain from disadvantaging them in favor of his own personal trading.

3. WILLIAM CARLTON, the defendant, carried out his fraudulent scheme by purchasing securities in his personal trading account, and then observing the price movements of those securities over the course of the trading day before deciding whether to keep the trade for himself or transfer the trade to a client account. When the price of a stock increased over the course

of the day, CARLTON typically sold the stock the same day and kept the profits for himself. By contrast, when the price of a stock decreased over the course of the day, CARLTON typically assigned the stock to his clients' accounts. As a result of CARLTON's scheme, approximately 70% of the trades CARLTON assigned to his own accounts experienced same-day gains. At the same time, only approximately 16% of the trades CARLTON assigned to his clients' accounts experienced same-day gains. Conversely, as a result of CARLTON's scheme, only approximately 30% of the trades CARLTON assigned to his own accounts experienced same-day losses. At the same time, approximately 84% of the trades CARLTON assigned to his clients' accounts experienced same-day losses. Through his cherry-picking scheme, CARLTON realized ill-gotten gains of approximately $6 million, while imposing losses on many of his clients.

4. WILLIAM CARLTON, the defendant, knew that purchasing securities in his own account and then making allocation decisions based on the price movements of the securities was wrong, and would violate his fiduciary duties to his clients and the federal securities laws. When confronted by the United States Securities and Exchange Commission about his conduct, however, CARLTON falsely denied that he had ever made trades in his personal account and later reassigned them to his clients' accounts, claiming instead that he placed all client trades individually and directly in each client's account. That statement was false and misleading.

**Statutory Allegations**

5. From at least January 2015 up to and including in or about August 2022, in the Southern District of New York and elsewhere, WILLIAM CARLTON, the defendant, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce, and of the mails and a facility of a national securities exchange, used and employed manipulative and deceptive devices and contrivances, in connection with the purchase and sale of

a security, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, CARLTON engaged in a fraudulent scheme to favor his personal trading accounts over his clients' accounts by allocating better-performing stock trades to himself and worse-performing stock trades to his clients.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Section 2.)

**FORFEITURE ALLEGATION**

6. As a result of committing the offense alleged in Count One of this Information, WILLIAM CARLTON, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

**Substitute Asset Provision**

7. If any of the above-described forfeitable property, as a result of any act or omission of WILLIAM CARLTON, the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

James M. McDonald
JAMES M. MCDONALD
United States Attorney